### IN THE UNITED STATED DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.H. | Civil No. _____ |
| *Plaintiff,* | CIVIL ACTION |
| STARBUCKS COFFEE COMPANY | |
| *Defendant.* | JURY TRIAL DEMANDED |

### COMPLAINT

AND NOW, comes the Plaintiff M.H. ("Plaintiff" or "M.H."), by and through her attorneys, Andreozzi + Foote, who files this Complaint against the Defendant, and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant pursuant to the New York State Human Rights Law ("NYSHRL") for her April 2021 rape by Justin Mariani, her Starbucks "Shift Supervisor." At the time, Plaintiff was just seventeen (17). Mariani pled guilty to Plaintiff's rape in May 2022.

### PARTIES

2. Plaintiff M.H. is an adult resident of New York State.

3. Plaintiff uses her initials as a pseudonym, as this matter involves her rape when she was a minor-child.

4. Defendant Starbucks Coffee Company *a/k/a* Starbucks Corporation ("Starbucks") is a Washington State-based corporation, registered as a foreign corporation in New York State, with DOS ID 1701167.

5. Starbucks' Washington State headquarters are located at 2401 Utah Avenue South, Seattle, WA 98134.

6. Starbucks, as a foreign corporation, designated New York County, situated within this District, as its principal office location in its application for authority to conduct business filed with the State of New York (*see*, CPLR § 503[c]; Business Corporation Law § 102 [a][10]).

7. At all relevant times, Starbucks created, oversaw, managed, controlled, directed, and operated coffee shops across New York, including all employees, contractors, and agents therein, including Plaintiff's coffee shop in Auburn, New York, as well as coffee shops in this District.

8. At all times relevant, Starbucks employed Plaintiff, and the man who raped her, Justin Mariani ("Perpetrator"), who was Plaintiff's "Shift Supervisor" at Starbucks by virtue of their mutual Starbucks employment.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, which gives U.S. district courts jurisdiction over civil actions between diverse parties.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) since the Defendant resides in this District.

## FACTS

**Sexual assault and harassment at Starbucks are ongoing, known hazards to Starbucks' female employees, which put Starbucks on notice of the danger posed to Plaintiff**

11. Prior to Plaintiff's rape by the Perpetrator as described herein, Starbucks was aware female employees had been sexually assaulted and/or harassed by male co-workers, supervisors, and patrons.

12. For example:

a. In 2010, a female Starbucks employee sued after her supervisor at Starbucks made demands on her for sex, months after she began working as a 16-year old barista; the supervisor pled guilty to a felony charge of illegal sex with a minor and served time in jail.
b. In 2012, a female Starbucks employee sued Starbucks for sexual harassment.
c. In 2014, a young woman who worked in a Starbucks in Manhattan's Union Square, sued the company claiming her supervisor made her call him "daddy," propositioned her, and assaulted her.
d. In 2018, Cosmopolitan ran a story titled *16 Starbucks Baristas Detail Disturbing Harassment By Customers*, which recounted their experiences of harassment at Starbucks.
e. In 2020, Starbucks was sued by a female employee in San Diego, alleging Starbucks failed to protect her from sexual harassment by a customer.

13. These are just several examples; upon information and belief, Starbucks is aware of many more allegations of sexual harassment and sexual assault of female employees.

**Justin Mariani is hired by Starbucks and rapes Plaintiff M.H.**

14. The Perpetrator was hired by Starbucks as a "Shift Supervisor" for Store #61922 on August 28, 2020.

15. As "Shift Supervisor," the Perpetrator was hired to be a "role model," who would "lead each shift, working alongside a team of baristas," including teen girls like Plaintiff.

16. Thereafter, Perpetrator worked for Starbucks as Shift Supervisor in Auburn, New York, including at Plaintiff's Starbucks location, at all relevant times described herein.

17. Before Perpetrator was hired, Perpetrator had multiple criminal charges, including, but not limited to:

a. On February 11, 2010, Perpetrator was charged with several counts of felony burglary in Campbell County, Kentucky. Judgment was entered against Perpetrator on August 26, 2010. (See *Commonwealth v. Justin Mariani*, Campbell County, Docket Nos. 10-CR-66, 68, 70, 72, and 74). He was sentenced to prison as a result.

      b. On March 11, 2010, Perpetrator was charged in the US District Court for the Eastern District of Kentucky (Docket No. 2:10-CR-14) with violation of a federal gun crime (26 U.S.C. §5861(d)) for possession of an unregistered firearm with an obliterated serial number. Judgment was entered against Perpetrator on May 25, 2011, and he was sentenced to 33 months in prison concurrent with his sentence on the Campbell County, Kentucky charges.

18. Starbucks' background check of Perpetrator went back only seven years, so Starbucks was unaware of the Perpetrator's criminal history, which was and is a public record and easily discoverable with minimal diligence.

19. Worse, after Perpetrator was hired, in February 2021, Perpetrator was investigated by Starbucks for sexual harassment of Starbucks' teenaged female employees.

20. The Perpetrator's misconduct included lewd, unwelcome sexual comments and sexual advances vis-à-vis teenage girls who worked under Perpetrator at Starbucks, including inappropriate physical touch.

21. In a "Corrective Action" dated March 31, 2021, Starbucks wrote that "based on corroboration and admission [Perpetrator] violated Starbucks' Anti-harassment standards. It was alleged that [Perpetrator] made inappropriate sexual comments, jokes, and innuendo in the workplace. It was also alleged that [Perpetrator] engaged in unwanted touching."

22. Starbucks itself determined Perpetrator had "engaged in a pattern of making inappropriate, sexual comments in the workplace."

23. Upon information and belief, Perpetrator also had a sexual relationship with one or more female Starbucks baristas who worked at Perpetrator's store(s).

24. Starbucks knew, or should have known, of Perpetrator's sexual activity with female Starbucks' employees.

25. All Starbucks did in response to Perpetrator's acknowledged sexual harassment was give Perpetrator a "final written warning."

26. The Perpetrator signed the Corrective Action form on April 2, 2021, acknowledging the written warning.

27. The Perpetrator was not terminated, nor adequately disciplined related to these allegations, as is obvious from his subsequent behavior.

28. Perpetrator's misconduct vis-à-vis female Starbucks baristas continued.

29. Before she turned eighteen (18), when Plaintiff was a minor child, Plaintiff was hired by Starbucks, starting her employment in December 2020 at Store #61922.

30. Thereafter, through their mutual Starbucks employment, Plaintiff met and worked with Perpetrator, who served as her "Shift Supervisor" at Starbucks.

31. Plaintiff had never met Perpetrator before their mutual Starbucks employment.

32. Absent their mutual Starbucks employment, Plaintiff would not have met Perpetrator.

33. On April 17, 2021, fifteen days after he signed the "Corrective Action" form, the Perpetrator raped Plaintiff.

34. At the time of the rape, Plaintiff was only seventeen (17), and Perpetrator was thirty-one (31) years old.

35. On April 21, 2022, Perpetrator was arrested at Starbucks for the rape of two women, including Plaintiff.

36. The Perpetrator's other victim was also a female Starbucks employee who worked with Plaintiff and Perpetrator.

37. On April 23, 2021, Perpetrator was terminated by Starbucks.

38. On May 9, 2022, Perpetrator pled guilty to raping Plaintiff, specifically Rape in the Third Degree under N.Y. § Penal Law 130.25. (*People v. Justin Mariani*, Cayuga County, No. 70238-21).

39. Perpetrator admitted to the following facts at his guilty plea hearing:



40. Starbucks' failure(s) regarding the hiring, screening, investigation, discipline, and/or retention of the Perpetrator enabled his rape of the Plaintiff, which has had a devastating impact on her.

41. Plaintiff continued working at Starbucks for a period after her rape, but ultimately resigned from Starbucks given the impact of the rape.

42. As a direct result of the Defendant's conduct described herein, Plaintiff suffered and will continue to suffer as follows:

   a. Severe and permanent emotional distress, including physical manifestations of emotional distress;
   b. Deprivation of the full enjoyment of life;
   c. Expenses for medical and psychological treatment, therapy, and counseling; and,
   d. Loss of income and/or loss of earning capacity.

## COUNT I

**Violation of the New York State Human Rights Law (NYSHRL)**

43. Plaintiff repeats and re-alleges every allegation set forth throughout this Complaint as if fully set forth herein.

44. Defendant discriminated against Plaintiff based on her sex in violation of the NYSHRL.

45. Defendant's calculated inaction in response to Perpetrator's discriminatory conduct equated to condonation of Perpetrator's harassing behavior of female Starbucks employees, including Plaintiff.

46. Defendant's response to actual notice of Perpetrator's discriminatory harassment of female Starbucks employees was unreasonable under the circumstances, particularly given Starbucks' longstanding awareness of the pervasiveness of such harassment within Starbucks.

47. In the alternative, Defendant is vicariously liable to Plaintiff vis-à-vis Perpetrator as Perpetrator was Plaintiff's supervisor, within the meaning of the NYSHRL, at the time Perpetrator raped Plaintiff.

48. Defendant owed a duty of care to all minor persons and females, including Plaintiff, who was likely to encounter Perpetrator in his role as Defendant's employee, agent, and servant.

49. Defendant owed a duty of care to all persons, including Plaintiff, to ensure Perpetrator did not use his position to injure women and girls by sexual assault, harassment, abuse, and/or sexual contact.

50. Defendant had an express and/or implied duty to provide a reasonably safe environment for Plaintiff and assumed the duty to protect and care for her.

51. Defendant negligently, grossly negligently, and/or recklessly hired, retained, and supervised Perpetrator, though it knew or should have known that Perpetrator posed a threat of harm to females.

52. Defendant negligently, grossly negligently, and/or recklessly retained Perpetrator with actual or constructive knowledge of Perpetrator's propensity for the type of behavior which resulted in Plaintiff's injuries in this action.

53. Defendant failed to investigate Perpetrator's criminal history, and through the exercise of reasonable diligence, should have precluded Perpetrator from working with females, including Plaintiff.

54. Defendant should have made an appropriate investigation of Perpetrator and failed to do so, which would have revealed the unsuitability of Perpetrator for continued employment, and it was unreasonable for Defendant to retain Perpetrator in light of the information it knew or should have known.

55. Defendant negligently retained Perpetrator in a position where he had access to female children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendant taken reasonable care.

56. In failing to timely remove Perpetrator from working with children or terminate the employment of Perpetrator, Defendant failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

57. Defendant knew or should have known of Perpetrator's propensity for sexual assault, abuse, and/or sexual contact with minors, the same conduct which caused Plaintiff's injuries.

58. Defendant knew or should have known of Perpetrator's propensity for sexual assault, abuse, and/or sexual contact with minors prior to, or at the time of, Plaintiff's injuries.

59. The Plaintiff's sexual abuse by Perpetrator was foreseeable, *i.e.,* Defendant was on notice of prior similar incidents and Plaintiff's sexual abuse was the proximate result of Defendant's negligent hiring, retention, and supervision of Perpetrator.

60. Perpetrator's acts described herein were undertaken, and/or enabled by, and/or during the course, and/or within the scope of Perpetrator's employment, appointment, assignment, and/or agency with Defendant.

61. Defendant took no precautions to prevent Plaintiff's injuries.

62. Defendant failed to take reasonable precautions to prevent Plaintiff's injuries.

63. Defendant gave improper or ambiguous orders, or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others.

64. Defendant failed to adequately supervise the activities of Perpetrator.

65. Defendant failed to protect against or warn the Plaintiff or her family of the known risk of sexual assault and/or harassment.

66. Defendant permitted, and/or intentionally failed, and/or neglected to prevent, negligent and/or grossly negligent conduct, and/or allowed other tortious conduct by persons, whether or not its servants, and/or agents, and/or employees, upon premises or with instrumentalities under its control.

67. Defendant allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

68. Defendant's actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in its disregard for the rights and safety of Plaintiff.

69. As a direct and proximate result of Defendant's actions and omissions, Plaintiff suffered and will continue to suffer injuries, as described herein.

70. By reason of the foregoing, Defendant is liable to the Plaintiff, jointly, severally, and/or in the alternative, liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## PUNITIVE DAMAGES

71. Plaintiff demands punitive damages under the NYSHRL, as amended.

## JURY DEMAND

72. Plaintiff demands a trial by jury on all issues so triable.

[Remainder of page intentionally left blank.]

**WHEREFORE** Plaintiff demands judgment against the Defendant in an amount more than $75,000, on each cause of action as follows:

a) Awarding economic compensatory damages in an amount to be proved at trial, in an amount that exceeds the jurisdictional limits of this Court;

b) Awarding punitive damages to the extent permitted by law;

c) Awarding prejudgment and post-judgment interest to the extent permitted by law;

d) Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and

e) Awarding such other and further relief as to this Court may seem just and proper.

Dated: December 13, 2022                    Respectfully Submitted,

**ANDREOZZI + FOOTE**

*s/ Nathaniel L. Foote*
Nathaniel L. Foote, Esq.
nate@vca.law
5 Penn Plaza, 23rd Fl., New York, NY 10001
Ph: 866.405.3305 | Fax: 717.525.9143
*Attorneys for Plaintiff*