```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
M.H.,                                                               :
                                                                    :
                                    Plaintiff,                      :
                                                                    :          1:22-cv-10507-GHW
                    -against-                                       :
                                                                    :         MEMORANDUM OPINION
STARBUCKS COFFEE COMPANY,                                           :             AND ORDER
                                                                    :
                                    Defendant.                      :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

    This case is borne of tragic circumstances. When Plaintiff M.H. was only seventeen, she was raped by Justin Mariani, who was then her shift supervisor at Defendant Starbucks Coffee Company. Mariani has since pleaded guilty in criminal court to that horrific crime. M.H. then brought this civil case against Starbucks, seeking to hold it vicariously liable under the New York State Human Rights Law (the "NYSHRL") for Mariani's conduct. Starbucks responded by filing the motion to dismiss that is the subject of this opinion, arguing that it could not be held responsible for Mariani's actions.

    Because the NYSHRL, unlike two other statutes frequently considered by the Court—Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law—permits holding an employer liable only for employee misconduct that it encourages, approves, or condones, and because Plaintiff's allegations fail to plausibly allege Starbucks' condonation of Mariani's behavior, Defendant's motion to dismiss will be GRANTED.

## I. BACKGROUND[1]

In December 2020, Plaintiff M.H. was hired as a Starbucks barista in Auburn, New York. Dkt. No. 1 ("Compl.") ¶¶ 7, 29. *Id.* Through her employment, she met Mariani, who had been hired as a "Shift Supervisor" at the same store a few months earlier on August 28, 2020. *Id.* ¶¶ 14, 29–31. Shift supervisors are hired to be "role model[s]" who "lead each shift, working alongside a team of baristas." *Id.* ¶ 15. When hired, Mariani had multiple previous criminal convictions stemming from burglary and gun-related incidents in 2010. *Id.* ¶ 17. But Plaintiff alleges that because Starbucks' background check went back only seven years, it was unaware of these charges. *Id.* ¶ 18.

In February 2021, Mariani was investigated by Starbucks for sexual harassment of Starbucks' teenaged female employees. *Id.* ¶ 19. This misconduct included "lewd, unwelcome comments" and "inappropriate physical touch" of employees. *Id.* ¶ 20. Plaintiff also alleges that at some point during this period, Mariani had "a sexual relationship with one or more female Starbucks baristas" and that Starbucks "knew . . . or should have known" about this activity. *Id.* ¶¶ 23–24. In a March 2021 "Corrective Action," Starbucks determined that Mariani had violated its anti-harassment standards, and noted that he had been alleged to have "engaged in a pattern of making inappropriate, sexual comments in the workplace" and to have "engaged in unwanted touching." *Id.* ¶¶ 21–22. Starbucks issued Mariani the corrective action as a "final written warning," which he signed on April 2, 2021. *Id.* ¶¶ 25–26.

On April 17, 2021, fifteen days after signing the corrective action, Mariani raped M.H. *Id.* ¶ 33. At the time, M.H. was seventeen. *Id.* ¶ 34. The rape did not occur at work or during work

---

[1] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

hours. *See id.* ¶ 39 (quoting from Mariani's guilty plea, in which he identifies the crime as having been committed at an address "in the town of Brutus," rather than Auburn, New York).[2] Mariani was arrested for this crime (and an additional rape) on April 21, 2021, and Starbucks terminated his employment two days later on April 23, 2021. *Id.* ¶¶ 35, 37. Mariani pleaded guilty to raping M.H. on May 9, 2022. *Id.* ¶ 38.

M.H. commenced her civil case against Starbucks in this Court on December 13, 2022. Dkt. No. 1 ("Compl."). The complaint raises a single count for an alleged violation of the NYSHRL. *Id.* ¶¶ 43–70. Starbucks filed its motion to dismiss on April 24, 2023, arguing that because Mariani was not a supervisor within the meaning of the NYSHRL, his actions were taken off-campus and outside of the scope of his employment, and Starbucks had no reason to believe that he would commit such an egregious crime, Plaintiff's complaint must be dismissed. Dkt. No. 21 ("Motion"); Dkt. No. 22 (memorandum in support, or "Def's Mem.") at 4–7.[3] Plaintiff opposed the motion on May 15, 2023, arguing that Mariani could be considered a supervisor at this stage, that Starbucks can be held responsible for actions that occur off-campus and after hours, and that Starbucks condoned Mariani's behavior. Dkt. No. 26 ("Pl's Opp.") at 6–15. Starbucks replied on May 22, 2023, Dkt. No. 27 ("Reply"), at which time the motion was fully briefed.

---

[2] The Court may take judicial notice of the fact that Brutus and Auburn are different towns. *See, e.g., United States v. Hernandez-Fundora*, 58 F. 3d 802, 811 (2d Cir. 1995) ("Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial." (quoting *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980))). And Plaintiff further explains in her opposition papers that the rape occurred "off-premises" and "after hours." Dkt. No. 26 at 7.

[3] While Defendant also addressed a potential negligent hiring, supervision, or retention claim in its motion to dismiss, *see* Def's Mem. at 7–18, Plaintiff has made clear that she is not bringing such a claim. *See* Dkt. No. 26 at 11 (Plaintiff's opposition papers clarifying that she "did not file negligence claims"); Dkt. No. 24-1 at 11:25–12:9 (the transcript of a pre-motion conference, which contained the following exchange: "THE COURT: . . . [I]s it correct, counsel that you are bringing this claim under the New York States Human Rights Law[?] You are not bringing a claim for negligent hiring, supervision, or retention. Is that right? [Plaintiff's counsel]: That is correct, your Honor. To be clear, our sole count is under the New York State Human Rights Law.").

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). As the Second Circuit recently reaffirmed in *Lynch*, "[i]t is well established that a pleading is deemed to include any 'written instrument' that is attached to it as 'an exhibit,' or is incorporated in it by reference." *Lynch*, 952 F.3d at 79 (citations omitted). Courts may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## III. DISCUSSION

Because Plaintiff's sole cause of action against Starbucks is for a hostile work environment under the NYSHRL, she is required to show that Starbucks encouraged, approved, or condoned

5

Mariani's behavior. And because the complaint does not plausibly allege such approval, it must be dismissed.

As an initial matter, Plaintiff's cause of action is a NYSHRL hostile-work-environment claim. Under the NYSHRL, as under other federal and local statutes, a plaintiff can bring a discrimination claim by pleading either that a discriminatory employment action was taken against her or that she suffered a hostile work environment. *See, e.g.*, *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305–12 (2004) (describing and separating out these theories).[4] To plausibly plead that a discriminatory employment action was taken against her, however, a plaintiff must allege—among other things—that "she was terminated from employment or suffered another adverse employment action." *Id.* at 305 (internal citation omitted). Here, Plaintiff makes no such allegation. *See* Compl. ¶ 41 (noting that M.H. continued to work at Starbucks after the rape). And Plaintiff's citations in support of her argument that "Starbucks may be liable for an off-premises, after hour rape under the NYSHRL" are solely to cases involving hostile-work-environment claims. Pl's Opp. at 7–9; *see Burhans v. State*, No. 152906/14, 2015 WL 195095, at *2 (Sup. Ct. N.Y. Cnty., Jan. 7, 2015) (stating that the discrimination claim was for an alleged hostile work environment); *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (same); *Doe v. New York State Assembly*, No. 3314-04, at 2 (Sup. Ct. Albany Cnty., Mar. 15, 2005) (same); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (same); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 134 (2d Cir. 2001) (same). As a result, the Court understands that Plaintiff's claim is for a hostile work environment under the NYSHRL.

Assessing that claim, the fact that it is brought under the NYSHRL rather than the comparable federal antidiscrimination statute—Title VII of the Civil Rights Act of 1964—makes a

---

[4] A discrimination claim can also be alleged through other theories including disparate-impact liability. *See, e.g.*, *Assistant Deputy Wardens v. City of New York*, No. 14-cv-4308, 2019 WL 4015119, at *2 (E.D.N.Y. Aug. 26, 2019) (describing the disparate-impact theory under the NYSHRL). It is clear from the face of Plaintiff's complaint that she does not allege any such alternate theory.

dispositive difference here.  It is true that, for the most part, "[h]ostile work environment claims under both Title VII and the NYSHRL are governed by the same standard." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013).  "There [is an] important distinction[ ], however," between the two laws. *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015).  Specifically, under Title VII, employers are strictly and vicariously liable for "an actionable hostile environment created by a supervisor," subject only to an affirmative defense that an employer may raise. *Burlington Indus., Inc. v. Ellerth*, 542 U.S. 742, 765 (1998).  But under the NYSHRL, "an employer is never strictly liable for the conduct of employees, even if the harassing employee is the Plaintiff's supervisor." *Marchuk*, 100 F. Supp. 3d at 307.[5]  Instead, a "private employer . . . [can] not be held liable under the State HRL for an employee's discriminatory act 'unless the employer became a party to it by encouraging, condoning, or approving it.'" *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021) (quoting *Matter of Totem Taxi v. N.Y. State Human Rts. Appeal Bd.*, 65 N.Y.2d 300, 305 (1985)); *see also Forrest*, 3 N.Y.3d at 311–12 (applying this rule to find that because the defendant employer did not know of "the use of racial slurs and insults by a supervisor," it could not be held liable under the NYSHRL for a hostile work environment).

To be sure, a number of cases in this circuit—relying on statements in *Summa* and elsewhere about the similarity between liability standards under Title VII and the NYSHRL—appear to have glossed over this difference between the two statutes. *See, e.g.*, *Swiderski v. Urban Outfitters, Inc.*, No. 14-cv-6307, 2015 WL 3513088, at *5 (S.D.N.Y. June 4, 2015) (finding that "a supervisor's conduct is attributable to the employer" "in general" under the NYSHRL); *McCalla v. City of New York*, No. 15-cv-8002, 2017 WL 3601182, at *44 (S.D.N.Y. 2017) ("[P]laintiffs establish liability against the City

---

[5] Because this rule applies to supervisors and other employees alike, the Court need not reach the disputed question of whether Plaintiff has plausibly alleged that Mariani was her supervisor for purposes of her NYSHRL claim.  *Compare* Def's Mem. at 6 n.4 (arguing that Mariani could not be a supervisor, but also that the Court need not reach the question), *with* Pl's Opp. at 9–11 (arguing that Mariani should be considered Plaintiff's supervisor at this stage of the proceedings).

for their NYSHRL and NYCHRL claims by showing that the alleged discriminatory conduct was perpetrated by a supervisor."). But there is no doubt that, under the New York Court of Appeals' interpretation of the NYSHRL, it remains true that a hostile work environment may not be imputed to an employer unless the employer encouraged, condoned, or approved it. That rule was reaffirmed just two years ago in *Doe v. Bloomberg L.P., LLC*. *See* 36 N.Y.3d at 455. And until and unless the New York Court of Appeals changes its view, its construction of the NYSHRL remains definitive for this and other federal (and state) courts. *See Portalatin v. Graham*, 624 F.3d 69, 89 (2d Cir. 2010) ("As the Supreme Court has long held, 'state courts are the ultimate expositors of state law,' . . . and '[n]either [the Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.'" (first quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), then quoting *Johnson v. Fankell*, 520 U.S. 911, 916 (1997))); *see also Hoit v. Cap. Dist. Transp. Auth.*, 805 F. App'x 41, 45 (2d Cir. Mar. 30, 2020) (summary order) (recognizing that while "[i]t is true, under Title VII, that an employer can be held strictly liable for the discriminatory conduct of a supervisor," because the plaintiff did "not assert a Title VII claim here, and the strict liability rule does not apply in the NYSHRL context," the fact that an alleged harasser was a supervisor was irrelevant to the case, and citing to *State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hospital*, 66 N.Y.2d 684, 687 (1985), for the proposition that "[a]n employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it").[6]

---

[6] Unfortunately, the confusion does not end there. For instance, some lower state courts in New York have held that a hostile-work-environment claim can be stated against an employer if "the employer knew *or should have known* of the harassment and failed to take remedial action." *Vitale v. Rosina Food Prods.*, 283 A.D.2d 141, 142 (4th Dep't 2001) (emphasis added); *see also, e.g.*, *Pace v. Ogden Servs. Corp.*, 257 A.D.2d 101, 103 (3d Dep't 1999). But a rule that an employer can be held liable for harassment that it did not know about (but should have) is flatly inconsistent with the New York Court of Appeals' holding that an employer can only be liable for conduct that it encourages, condones, or approves. *See Doe v. Bloomberg*, 36 N.Y.3d at 455; *see also St. Elizabeth's Hosp.*, 66 N.Y.2d at 687 ("Condonation . . . contemplates a *knowing*, after-the-fact forgiveness or acceptance of the offense." (emphasis added)). It appears that the provenance of the "should have known" language in the above-listed (and other) lower-state-court decisions is a federal district-court case, *Fair v. Guiding Eyes for the Blind, Inc.*, which interpreted a hostile-work-environment claim under Title VII. *See* 742 F.

8

Under the applicable standard, Starbucks cannot be held liable for Mariani's acts because Plaintiff has not plausibly pleaded that Starbucks "became a party to [them] by encouraging, condoning, or approving [them]." *Forrest*, 3 N.Y.3d at 311. To start, Plaintiff does not allege or argue that Starbucks encouraged, condoned, or approved of the rape itself, given that Mariani was fired just six days after the rape occurred. Compl. ¶¶ 33, 37.[7] Instead, the conduct that Plaintiff alleges that Starbucks inappropriately condoned are Mariani's prior "lewd, unwelcome comments," his "inappropriate physical touch," and an alleged prior relationship (or relationships) with female employees. *See id.* ¶¶ 19–24.[8]

The problem for Plaintiff is that the complaint states that, after learning about the allegations against Mariani, Starbucks gave him "a final written warning" that was signed on April 2, 2021. *Id.* ¶¶ 25–26. In other words, according to the complaint itself, Starbucks took disciplinary action to address Mariani's behavior. To be sure, and as Plaintiff argues in her complaint and briefing, it is entirely reasonable to question whether this response was sufficient; indeed, given the crime that Mariani would later commit, it is impossible not to think that Starbucks should have taken significantly greater corrective measures. But the standard under the NYSHRL is that to be liable for an employee's harassment, the employer must have been made "a party" to the misconduct by "encouraging, condoning, or approving it." *Forrest*, 3 N.Y.3d at 311. And while "[a]n employer's calculated inaction in response to discriminatory conduct may . . . indicate condonation," *St.*

---

Supp. 151, 155 (S.D.N.Y. 1990). This Court therefore regards this stray "should have known" language as reflecting an improper importation of a federal-law standard into some lower-state-court cases, rather than an accurate reflection of New York state law concerning the NYSHRL.

[7] Because Plaintiff does not allege that Starbucks condoned the rape itself, moreover, Court need not address whether that act could contribute to or constitute a hostile work environment even though it occurred off-campus and after hours. *See, e.g.*, Def's Mem. at 4–7.

[8] Plaintiff also raises an argument that Mariani's prior criminal charges for burglary and a gun-related crime "demonstrate his inappropriateness for Starbucks employment" in the first place. Pl's Opp. at 12; *see* Compl. ¶¶ 17–18. But these allegations that Mariani should not have been hired do not speak to the hostility of the work environment that Plaintiff experienced, or whether Starbucks condoned that hostility. Instead, they would be relevant to a negligent hiring or retention claim—but Plaintiff has specifically and repeatedly disclaimed bringing that cause of action. *See* Pl's Opp. at 11; Dkt. No. 24-1 at 11:25–12:9.

9

*Elizabeth's Hosp.*, 66 N.Y.2d at 687, a good-faith response to address misconduct precludes a conclusion that an employer has condoned misbehavior even if reasonable people could find that response insufficient. *See, e.g.*, *Holt v. Dynaserv Indus., Inc.*, No. 14-cv-8299, 2016 WL 5108205, at *10 (S.D.N.Y. Sept. 19, 2016) ("There is no evidence that [the defendant employer] condoned, encouraged or approved the harassing conduct alleged by Plaintiff. Although there are factual questions as to the sufficiency of [the defendant's] response to Plaintiff's complaints, no reasonable jury could conclude that [the defendant] approved or encouraged the behavior in question.").

Though Plaintiff argues that her pleaded facts show that Starbucks' "handling of Mariani's employment amounted to 'condonation' of Mariani's misbehavior under the NYSHRL," Pl's Opp. at 11, she does not cite any cases to support the proposition that an insufficient but good-faith disciplinary action can constitute condonation under the statute. *See id.* at 11–13. Nor is the Court independently aware of any such cases. To the contrary, to the Court's knowledge, courts have found that an employer condones harassment (and thus becomes a party to it) only where the employer either takes no action in response to accusations or where any action taken is alleged to have been in bad faith. *See, e.g.*, *Soto v. CDL (N.Y.) LLC*, No. 18-cv-5678, 2020 WL 2133370, at *15 (employer plausibly a party to underlying misconduct because while it launched an investigation, it also told the plaintiff "that it was her word against [the three employees accused of misconduct], and there were three of them and . . . only one of her" and took no disciplinary action against one of the accused employees (cleaned up)); *EEOC v. Suffolk Laundry Servs.*, 48 F. Supp. 3d 497, 522 (E.D.N.Y. 2014) (employers plausibly a party to underlying misconduct because, though they "took some proactive measures" in response to the misconduct, they also allegedly "informed several Intervenor-Plaintiffs that they did not believe them and would not believe [them] over" the person who was alleged to have engaged in harassment); *Doe v. New York State Assembly*, No. 3314-04, at 8 (employers plausibly a party to misconduct because, although they ostensibly undertook an

10

investigation, they also "publicly declared confidence in [the individual who allegedly engaged in misconduct] and expressed the belief that [he] would be exonerated"); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 530 (S.D.N.Y. 1998) (employers plausibly a party to underlying misconduct because they "did not investigate or discipline" the employees who allegedly engaged in harassment); *compare Lyons v. Citi Trends, Inc.*, No. 21-cv-8365, 2023 WL 1821042, at *4 (S.D.N.Y. Feb. 8, 2023) (where a Plaintiff's complaint "suggest[s] remedial measures may have been taken by [the] Defendant," she had not plausibly alleged the defendant's condonation of employee misconduct).

As described above, Plaintiff's complaint here does not allege that Starbucks' discipline—in the form of a final written warning to Mariani—was anything other than a genuine (if insufficient) disciplinary measure. Her complaint thus does not plausibly allege that Starbucks encouraged, approved, or condoned his actions. And without such allegations, under the NYSHRL, Starbucks cannot be held liable for Mariani's harassment. *See Doe v. Bloomberg*, 36 N.Y.3d at 455. Defendant's motion to dismiss is accordingly granted.

## IV. LEAVE TO AMEND

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is true that leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted). But none of those conditions apply here: the Court cannot conclude that amendment of the complaint would be futile. And Plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,

11

797 F.3d 160, 190 (2d Cir. 2015).  Plaintiff is therefore granted leave to file an amended complaint, which must be filed and served no later than twenty-one days from the date of this order.

## V.  CONCLUSION

For the reasons described above, Defendant's motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 21.

SO ORDERED.

Dated:  August 13, 2023  
New York, New York

                    GREGORY H. WOODS  
                   United States District Judge