IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

M.H.                                                          No. 1:22-cv-10507-GHW

*Plaintiff,*                                                  CIVIL ACTION


STARBUCKS COFFEE COMPANY

*Defendant.*                                                 JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

AND NOW, comes the Plaintiff M.H. ("Plaintiff" or "M.H."), by and through her attorneys, Andreozzi + Foote, who files this Complaint against the Defendant, and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Defendant because of her April 2021 rape by Justin Mariani, her Starbucks "Shift Supervisor."

2.      At the time, Plaintiff was just seventeen.

3.      Mariani pled guilty to Plaintiff's rape in May 2022.

### PARTIES

4.      Plaintiff M.H. is an adult resident of New York state.

5.      Plaintiff uses her initials as a pseudonym, as this matter involves her rape when she was a minor-child.

6.      Defendant Starbucks Coffee Company *aka* Starbucks Corporation ("Starbucks") is a Washington state-based corporation, registered as a foreign corporation in New York state, with DOS ID 1701167.

7. Starbucks' Washington state headquarters are located at 2401 Utah Ave. South, Seattle, WA 98134.

8. Starbucks, as a foreign corporation, designated New York County, situated within this District, as its principal office location in its application for authority to conduct business filed with the State of New York (*see*, CPLR § 503[c]; Business Corporation Law § 102 [a][10]).

9. At all relevant times, Starbucks created, oversaw, managed, controlled, directed, and operated coffee shops across New York, including all employees, contractors, and agents therein, including Plaintiff's coffee shop in Auburn, New York, as well as coffee shops in this District.

10. At all times relevant, Starbucks employed Plaintiff, and the man who raped her, Justin Mariani ("Perpetrator"), who was Plaintiff's "Shift Supervisor" at Starbucks by virtual of their mutual Starbucks employment.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, which gives U.S. district courts jurisdiction over civil actions between diverse parties.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) since the Defendant resides in this District.

## FACTS

**Sexual assault and harassment at Starbucks are an ongoing, known hazards to Starbucks' female employees, which put Starbucks on notice of the danger posed to Plaintiff**

13. Prior to Plaintiff's rape by the Perpetrator as described herein, Starbucks was aware female employees had been sexually assaulted and/or harassed by male co-workers, supervisors, and patrons.

14. For example:

a. In 2010, a female Starbucks employee sued after her supervisor at Starbucks made demands on her for sex, months after she began working as a 16-year old barista; the supervisor pled guilty to a felony charge of illegal sex with a minor and served time in jail.

b. In 2012, a female Starbucks employee sued Starbucks for sexual harassment.

c. In 2014, a young woman who worked in a Starbucks in Manhattan's Union Square, sued the company claiming her supervisor made her call him "daddy," propositioned her, and assaulted her.

d. In 2018, Cosmopolitan ran a story titled *16 Starbucks Baristas Detail Disturbing Harassment By Customers*, which recounted their experiences of harassment at Starbucks.

e. In 2020, Starbucks was sued by a female employee in San Diego court, alleging Starbucks failed to protect her from sexual harassment by a customer.

15. These are just several examples; upon information and belief, Starbucks is aware of many more allegations of sexual harassment and sexual assault of female employees.

16. Starbucks' policies, procedures, and practices are inadequate for the purpose of deterring and preventing sexual harassment and assault of its minor employees.

**Justin Mariani is hired by Starbucks**

17. The Perpetrator was hired by Starbucks as a "Shift Supervisor" for Store #61922 on August 28, 2020.

18. As "Shift Supervisor," the Perpetrator was hired to be a "role model," who would "lead each shift, working alongside a team of baristas," including teen girls like Plaintiff.



Mariani

19. Thereafter, Perpetrator worked for Starbucks as Shift Supervisor in Auburn, New York, including at Plaintiff's Starbucks location, at all relevant times described herein.

20. Perpetrator also worked at a Starbucks location in Camillus, New York.

21.     Before Perpetrator was hired, Perpetrator had multiple criminal charges, including, but not limited to:

    a. On February 11, 2010, Perpetrator was charged with several counts of felony burglary in Campbell County, Kentucky.  Judgment was entered against Perpetrator on August 26, 2010.  (See *Commonwealth v. Justin Mariani*, Campbell County, Docket Nos. 10-CR-66, 68, 70, 72, and 74). He was sentenced to prison as a result.

    b. On March 11, 2010, Perpetrator was charged in the US District Court for the Eastern District of Kentucky (Docket No. 2:10-CR-14) with violation of a federal gun crime (26 U.S.C. §5861(d)) for possession of an unregistered firearm with an obliterated serial number.  Judgment was entered against Perpetrator on May 25, 2011, and he was sentenced to 33 months in prison concurrent with his sentence on the Campbell County, Kentucky charges.

22.     Starbucks' background check of Perpetrator went back only seven years, so Starbucks was unaware of the Perpetrator's criminal history, which was and is a public record and easily discoverable with minimal diligence.

**Mariani's History of Sexual Misconduct at Starbucks**

23.     After Perpetrator was hired, Perpetrator engaged in sexual misconduct vis-à-vis his female co-workers, some of whom were underage girls like Plaintiff.

24.     The Perpetrator's misconduct included lewd, unwelcome sexual comments and sexual advances vis-à-vis teenage girls who worked with Perpetrator at Starbucks, including inappropriate physical touch.

25.     Upon information and belief, Perpetrator was reported for sexual harassment at least two times at two different Starbucks locations, both in Camillus, but also in Auburn.

26.     Upon information and belief, Perpetrator engaged in sexual misconduct at a Starbucks location in Camillus, New York, in addition to the location in Auburn, New York, where he worked with the Plaintiff.

27.     Starbucks' managers were aware of Perpetrator's behavior prior to Starbucks' investigation or formal discipline of him.

28.     Upon information and belief, Perpetrator began to sexually harass female coworkers shortly after he was hired in August 2020.

29.     In November 2020, a female Starbucks barista (C.B.) that worked with Perpetrator began to experience sexual harassment from Perpetrator, including, but not limited to, sexual comments, inappropriate touching, and even sexual groping.

30.     In November 2020, the C.B. reported her experiences to a Starbucks manager.

31.     However, despite C.B.'s report, no investigation nor discipline was conducted regarding Perpetrator.

32.     Starbucks' inaction in the face of C.B.'s report emboldened the Perpetrator.

33.     Perpetrator's behavior continued.

34.     In late 2020 or early 2021, a teen female Starbucks Barista (A.K.) was warned by employees at the Camillus Starbucks to "watch out" for the Perpetrator.

35.     A.K. later complained about Perpetrator to her boss(es) at Starbucks.

36.     In February 2021, Starbucks's opened an investigation into the Perpetrator.

37.     Starbucks investigation was related, in part, to a complaint that a female shift supervisor from Camillus had been touched inappropriately by the Perpetrator, in addition to A.K.'s complaint(s) about Perpetrator.

38.     Upon information and belief, the investigation was only opened because C.B. went above her own supervisor to a Starbucks district manager.

39.     Starbucks downplayed the severity of Perpetrator's conduct during the investigation, to include C.B.'s previously reported experiences.

40. Starbucks, however, spoke to A.K. and other girls, who reported sexual misconduct by the Perpetrator.

41. During the period of Starbucks' investigation between February and March 2021, Perpetrator's sexually harassing behavior continued.

42. The Perpetrator did not take Starbucks' investigation seriously.

43. The Perpetrator joked with Starbucks co-workers about the investigation.

44. The Perpetrator knew he was being investigated but did nothing in response; he did not stop he sexually harassing behavior.

45. To the contrary, it continued.

46. A.K. (and potentially other girls) continued to complain about the Perpetrator after the investigation was opened, but Starbucks did not address the subsequent complaint(s).

47. During Starbucks investigation, Starbucks did not speak with all of Perpetrator's female co-workers.

48. Other of Perpetrator's female coworkers that Starbucks did not interview were also sexual harassed by Perpetrator.

49. Starbucks incomplete investigation emboldened Perpetrator's continued harassing behavior.

50. In a "Corrective Action" dated March 31, 2021, Starbucks wrote that "based on corroboration and admission [Perpetrator] violated Starbucks Anti-harassment standards. It was alleged that [Perpetrator] made inappropriate sexual comments, jokes, and innuendo in the workplace. It was also alleged that [Perpetrator] engaged in unwanted touching."

51. Starbucks determined Perpetrator had "engaged in a pattern of making inappropriate, sexual comments in the workplace."

52.    Perpetrator signed a written warning from Starbucks on April 2, 2021.

53.    Perpetrator did not view the written warning as meaningful discipline.

54.    The Perpetrator's sexual harassment of his female coworkers continued after the written warning.

55.    Upon information and belief, Perpetrator also had a sexual relationship with one or more female Starbucks baristas who worked at Perpetrator's store(s).

56.    Starbucks knew, or should have known, of Perpetrator's sexual activity with female Starbucks' employees.

57.    All Starbucks did in response to Perpetrator's acknowledged sexual harassment was it gave Perpetrator a written warning in April 2021.

58.    The Perpetrator was not terminated, nor adequately disciplined related to his sexual harassment of his female coworkers, as is obvious from his subsequent behavior.

59.    Starbucks initial inaction and then superficial investigation into Perpetrator was not reasonably calculated to stop his behavior.

60.    Starbucks' "calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation."[1]

61.    Perpetrator's misconduct vis-à-vis female Starbucks baristas continued both during Starbucks' investigation, and after Starbucks' "discipline" of the Perpetrator.

62.    Before she turned 18, when Plaintiff was a minor child, Plaintiff was hired by Starbucks, starting her employment in December 2020 at Store #61922.

63.    Thereafter, through their mutual Starbucks employment, Plaintiff met and worked with Perpetrator, who served as her "Shift Supervisor" at Starbucks.

---

[1] *State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268, 496 N.Y.S.2d 411 (1985).

64.    Plaintiff had never met Perpetrator before their mutual Starbucks employment.

65.    Absent their mutual Starbucks employment, Plaintiff would not have met Perpetrator.

66.    During their mutual Starbucks employment, prior to Perpetrator's rape of Plaintiff, Perpetrator sexual harassed Plaintiff at Starbucks.

67.    For example, shortly after Plaintiff started at Starbucks, in late 2020 or early 2021, a female coworker overheard the Perpetrator saying sexually inappropriate things to the then minor Plaintiff.

68.    Plaintiff's female coworker had to tell the Perpetrator to cut it out given Plaintiff was a minor female.

69.    On April 17, 2021, fifteen days after he signed Starbucks' "Corrective Action" form, the Perpetrator raped Plaintiff.

70.    At the time of the rape, Plaintiff was only 17, and Perpetrator was 31 years old.

71.    On April 21, 2022, Perpetrator was arrested at Starbucks for the rape of two women, including Plaintiff.

72.    The Perpetrator's other victim was also a female Starbucks employee who worked with Plaintiff and Perpetrator.

73.    On April 23, 2021, Perpetrator was terminated by Starbucks.

74.    On May 9, 2022, Perpetrator pled guilty to raping Plaintiff, specifically Rape in the Third Degree under N.Y. § Penal Law 130.25.  (*People v. Justin Mariani*, Cayuga County, No. 70238-21).

75.    Perpetrator admitted to the following facts at his guilty plea hearing:

THE COURT: I'm looking at Count 4, also Rape in the Third Degree, where it's alleged that on or about April 17, 2021 at or near East Brutus Street in the town of Brutus, county of Cayuga it's alleged that you had engaged in sexual intercourse with an individual with the

6

PEOPLE -V- JUSTIN MARIANI

initials of M.H. and you did that without her consent, where such lack of consent was by reason of some factor other than the incapacity to consent and at the time of the sexual intercourse, M.H. clearly expressed that she did not consent to engage in sexual intercourse and a reasonable person in your position would have understood her words and actions as an expression of lack of consent to engage in sexual intercourse and that was due to unconsciousness due to voluntary intoxication while you engaged in sexual intercourse with her. Is that correct?

MR. MARIANI: Yes, your Honor.

THE COURT: Once again, tell me in your own words what happened on or about April 17 of 2021.

MR. MARIANI: I had a un-consensual sex with her due to voluntary intoxication.

THE COURT: She was unconscious?

MR. MARIANI: Correct, sir.

THE COURT: And you knew that was wrong?

MR. MARIANI: Yes, sir.

THE COURT: And you knew it was illegal?

MR. MARIANI: Yes.

THE COURT: Ms. DeStefano.

MS. DESTEFANO: And given the fact she was unconscious, you had sex with her anyway, correct?

MR. MARIANI: Yes.

76.    Starbucks failure(s) regarding the supervision, hiring, screening, investigation, discipline, and/or retention of the Perpetrator enabled his rape of the Plaintiff, which has had a devastating impact on her.

77.    Plaintiff continued working at Starbucks for a period after her rape, but ultimately resigned from Starbucks in part given the impact of the rape.

78.    As a direct result of the Defendant's conduct described herein, Plaintiff suffered and will continue to suffer as follows:

    a.  Severe and permanent emotional distress, including physical manifestations of emotional distress;
    b.  Deprivation of the full enjoyment of life;
    c.  Expenses for medical and psychological treatment, therapy, and counseling; and,
    d.  Loss of income and/or loss of earning capacity.

## COUNT I

### Violation of the New York State Human Rights Law (NYSHRL)

79.    Plaintiff repeats and re-alleges every allegation set forth throughout this Complaint as if fully set forth herein.

80.    Defendant(s) discriminated against Plaintiff based on her sex in violation of the NYSHRL.

81.    Defendant(s) inaction in response to discriminatory conduct equated to acquiescence and/or condonation of Perpetrator's harassing behavior of female Starbucks employees, including Plaintiff.

82.    Defendant(s) response to actual notice of Perpetrator's discriminatory harassment of female Starbucks' employees was unreasonable under the circumstances, particularly given Starbucks' longstanding awareness of the pervasiveness of such harassment within Starbucks.

83.     By reason of the foregoing, Defendant(s) is/are liable to the Plaintiff, jointly, severally, and/or in the alternative, liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## COUNT II

### Negligent Supervision, Hiring, and/or Retention

84.     Defendant(s) owed a duty of care to Plaintiff as a minor-child, under a similar standard applied to New York schools and other institutions that care for minors.

85.     In multiple cases, New York's courts have determined that institutions are liable in negligence for the off-premises sexual assaults of minors, including, but not limited to:

   a. *Bell v. Bd. of Educ.*, 90 N.Y.2d 944 (1997);
   b. *Peter T. v. Children's Vil., Inc.*, 30 A.D.3d 582 (2d Dept. 2006);
   c. *Johansmeyer v. New York City Dept. of Educ.*, 165 A.D.3d 634 (2d Dept. 2018);
   d. *Werner v. Taconic Hills*, Index No. E012020015760 (Columbia Cty. 10/10/2020)(Mackey, J.);
   e. *Q.D. v. Rochester City School District*, E2021002565 (Monroe Cty., 9/14/2021)(Chimes, J.);
   f. *Rabin v. Westchester Day School, et al.*, 63893/2019 (Westchester Cty. 4/27/2021);
   g. *Bason v. Westchester Day School, et al.*, 63892/2019 (Westchester Cty. 4/27/2021); and,
   h. *Kamerman v. Westchester Day School, et. al.*, 63894/2019 (Westchester Cty., 4/27/2021).

86.     Defendant(s) owed a duty of care to all minor persons and females, including Plaintiff, who was likely to encounter Perpetrator in his role as Defendant's employee, agent, and servant.

87.     Defendant(s) owed a duty of care to all persons, including Plaintiff, to ensure Perpetrator did not use his position to injure women and girls by sexual assault, harassment, abuse, and/or sexual contact.

88.    Defendant(s) had an express and/or implied duty to provide a reasonably safe environment for Plaintiff and assumed the duty to protect and care for her.

89.    Defendant(s) negligently, grossly negligently, and/or recklessly hired, retained, and supervised Perpetrator, though they knew or should have known that Perpetrator posed a threat of harm to females.

90.    Defendant(s) negligently, grossly negligently, and/or recklessly retained Perpetrator with actual or constructive knowledge of Perpetrator's propensity for the type of behavior which resulted in Plaintiff's injuries in this action.

91.    Defendant(s) failed to investigate Perpetrator's criminal history, and through the exercise of reasonable diligence, should have precluded Perpetrator from working with females, including Plaintiff.

92.    Defendant(s) should have made an appropriate investigation of Perpetrator and failed to do so, which would have revealed the unsuitability of Perpetrator for continued employment, and it was unreasonable for Defendant(s) to retain Perpetrator in light of the information they knew or should have known.

93.    Defendant(s) negligently retained Perpetrator in a position where he had access to female children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendant taken reasonable care.

94.    In failing to timely remove Perpetrator from working with children or terminate the employment of Perpetrator, Defendant(s) failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

95.    Defendant(s) knew or should have known of Perpetrator's propensity for sexual assault, abuse, and/or sexual contact with minors, the same conduct which caused Plaintiff's injuries.

96.    Defendant(s) knew or should have known of Perpetrator's propensity for sexual assault, abuse, and/or sexual contact with minors prior to, or at the time of, Plaintiff's injuries.

97.    The Plaintiff's sexual abuse by Perpetrator was foreseeable, *i.e.,* Defendant(s) were on notice of prior similar incidents and Plaintiff's sexual abuse was the proximate result of Defendant(s)'s negligent hiring, retention, and supervision of Perpetrator and Plaintiff.

98.    Perpetrator's acts described herein were undertaken, and/or enabled by, and/or during the course, and/or within the scope of Perpetrator's employment, appointment, assignment, and/or agency with Defendant(s).

99.    Defendant(s) took no precautions to prevent Plaintiff's injuries.

100.    Defendant(s) failed to take reasonable precautions to prevent Plaintiff's injuries.

101.    Defendant(s) gave improper or ambiguous orders, or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others.

102.    Defendant(s) failed to adequately supervise the activities of Perpetrator and/or Plaintiff.

103.    Defendant knew or should have known of Perpetrator's sexually harassing conduct vis-à-vis the Plaintiff on Defendant's premises.

104.    Defendant(s) failed to protect against or warn the Plaintiff or her family of the known risk of sexual assault and/or harassment.

105.    Defendant(s) permitted, and/or intentionally failed, and/or neglected to prevent, negligent and/or grossly negligent conduct, and/or allowed other tortious conduct by persons, whether their servants, and/or agents, and/or employees, upon premises or with instrumentalities under their control.

106.    Defendant(s) allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

107.    Defendant(s) actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

108.    As a direct and proximate result of Defendant(s)'s actions and omissions, Plaintiff suffered and will continue to suffer injuries, as described herein.

109.    By reason of the foregoing, Defendant(s) is/are liable to the Plaintiff, jointly, severally, and/or in the alternative, liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

**PUNITIVE DAMAGES**

110.    Plaintiff demands punitive damages.

**JURY DEMAND**

111.    Plaintiff demands a trial by jury on all issues so triable.

[Remainder of page intentionally left blank.]

**WHEREFORE** Plaintiff demands judgment against the Defendant in an amount more than $75,000, on each cause of action as follows:

a)  Awarding compensatory damages in an amount to be proved at trial, in an amount that exceeds the jurisdictional limits of this Court;
b)  Awarding punitive damages to the extent permitted by law;
c)  Awarding prejudgment and post-judgment interest to the extent permitted by law;
d)  Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and
e)  Awarding such other and further relief as to this Court may seem just and proper.

Dated:  September 20, 2023

Respectfully Submitted,
**ANDREOZZI + FOOTE**

*s/ Nathaniel L. Foote*
Nathaniel L. Foote, Esq.
nate@vca.law
5 Penn Plaza, 23rd Fl., New York, NY 10001
Ph: 866.405.3305 | Fax: 717.525.9143

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on this date I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

September 20, 2023                                        *s/ Nathaniel L. Foote, Esq.*