UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.H.,<br><br>         Plaintiff,<br><br>    v.<br><br>STARBUCKS COFFEE COMPANY,<br><br>         Defendant. | 22 Civ. 10507 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  In this action, Plaintiff M.H., a former employee of Defendant Starbucks Coffee Company ("Starbucks"), raises claims against Starbucks for (1) hostile work environment under the New York State Human Rights Law ("NYSHRL") and (2) negligent supervision, hiring, and/or retention under New York law. *See* Second Am. Compl. ("SAC") ¶¶ 79-109, ECF No. 37. Before the Court is Defendant's motion to dismiss Plaintiff's SAC. ECF No. 41. For the reasons discussed herein, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

BACKGROUND

  **I. Procedural Background**

  On December 13, 2022, Plaintiff M.H. filed her original complaint, and on April 24, 2023, Defendant filed its first motion to dismiss. *See* ECF Nos. 1, 21. On August 13, 2023, the Court granted Defendant's motion to dismiss and granted Plaintiff leave to amend her pleadings. *See M.H. v. Starbucks Coffee Co.*, No. 22 Civ. 10507, 2023 WL 5211023, at *1-2 (S.D.N.Y. Aug. 13, 2023) (Woods, J.). Plaintiff filed amended complaints on August 29 and September 22,

2023.  ECF Nos. 32, 37.  The SAC is the operative pleading.  On November 3, 2023, Defendant filed its now-fully briefed second motion to dismiss.  *See* ECF No. 41.[1]

## II.     Factual Background

The following facts are drawn from Plaintiff's pleadings and are assumed to be true solely for purposes of adjudicating Defendant's motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[2]

On April 17, 2021, Plaintiff M.H. was raped by Justin Mariani ("Mariani").  *See* SAC ¶ 69.  M.H. was a Starbucks barista in Auburn, New York; Mariani was a Starbucks shift supervisor.  *See id.* ¶¶ 4, 9-10.  Mariani subsequently pleaded guilty in criminal court to raping Plaintiff.  *See id.* ¶¶ 1-3.

Prior to Plaintiff's employment at Starbucks, in November 2020, a female Starbucks barista, C.B., was sexually harassed and reported harassment by Mariani.  *See id.* ¶¶ 29-30.  Despite C.B.'s report, Starbucks conducted no investigation nor discipline at that time.  *See id.* ¶ 31.  Because the following facts, articulated by the Court's August 13, 2023, opinion, remain unmodified by the SAC, the Court re-adopts them for purposes of considering this motion:

> In December 2020, Plaintiff M.H. was hired as a Starbucks barista in Auburn, New York.  Through her employment, she met Mariani, who had been hired as a "Shift Supervisor" at the same store a few months earlier on August 28, 2020.  Shift supervisors are hired to be "role model[s]" who "lead each shift, working alongside a team of baristas."  When hired, Mariani had multiple previous criminal convictions stemming from burglary and gun-related incidents in 2010.  But Plaintiff alleges that because Starbucks' background check went back only seven years, it was unaware of these charges.

---

[1] On December 11, 2023, the case was reassigned to the undersigned.  Dec. 11, 2023, Min. Entry.

[2] In all quotations from cases, internal quotation marks, citations, footnotes, emphases, brackets, ellipses, and other alterations are omitted, unless otherwise indicated.

2

> In February 2021, Mariani was investigated by Starbucks for sexual harassment of Starbucks' teenaged female employees. This misconduct included "lewd, unwelcome comments" and "inappropriate physical touch" of employees.

*M.H.*, 2023 WL 5211023, at *1. Starbucks' investigation into Mariani was related, in part, to complaints by a female shift supervisor alleging that Mariani had touched her inappropriately, as well as by a teenage, female Starbucks barista, A.K., who complained generally to her boss(es) at Starbucks about Mariani. *See* SAC ¶¶ 34-35, 37.

Starbucks "spoke to A.K. and other girls, who reported sexual misconduct by" Mariani, but did not speak to "all of [Mariani's] female co-workers." *Id*. ¶¶ 40, 47. "During the period of Starbucks' investigation between February and March 2021, Perpetrator's sexually harassing behavior continued." *Id*. ¶ 41. In particular, "[Mariani] sexual harassed Plaintiff at Starbucks," for example by "saying sexually inappropriate things" to her. *Id*. ¶¶ 66-67.

> Plaintiff also alleges that at some point during this period, Mariani had "a sexual relationship with one or more female Starbucks baristas" and that Starbucks "knew . . . or should have known" about this activity. In a March 2021 "Corrective Action," Starbucks determined that Mariani had violated its anti-harassment standards, and noted that he had been alleged to have "engaged in a pattern of making inappropriate, sexual comments in the workplace" and to have "engaged in unwanted touching." Starbucks issued Mariani the corrective action as a " . . . written warning," which he signed on April 2, 2021.
>
> On April 17, 2021, fifteen days after signing the corrective action, Mariani raped M.H. At the time, M.H. was seventeen. The rape did not occur at work or during work hours. Mariani was arrested for this crime (and an additional rape) on April 21, 2021, and Starbucks terminated his employment two days later on April 23, 2021. Mariani pleaded guilty to raping M.H. on May 9, 2022.

*M.H.*, 2023 WL 5211023, at *1. Plaintiff further alleges that Starbucks' "initial inaction and then superficial investigation into Perpetrator was not reasonably calculated to stop his behavior." SAC ¶ 59.

**LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, a complaint that offers labels and conclusions or naked assertions without further factual enhancement will not survive a motion to dismiss." *M.H*, 2023 WL 5211023, at *2.

**DISCUSSION**

For the reasons discussed below, Plaintiff's hostile work environment claim survives but Plaintiff's negligent supervision, hiring, and/or retention claim is dismissed.

**I.      NYSHRL Hostile Work Environment**

"Until recently, hostile work environment claims under the NYSHRL were governed by the same standard as federal law claims brought under Title VII." *Wheeler v. Praxair Surface Techs., Inc.*, No. 21 Civ. 1165, 2023 WL 6282903, at *10 (S.D.N.Y. Sept. 26, 2023). Under that standard, a movant was required to establish that "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exist[ed] for imputing the objectionable conduct to the employer." *Id.* Effective following the law's 2019 amendments, however, the NYSHRL is now "closer to" the New York City Human Rights Law ("NYCHRL") standard. *Id*. "To make out a hostile work environment claim under NYCHRL, a plaintiff need not allege 'either materially

4

adverse employment actions or severe and pervasive conduct.'" *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)). "Rather, a plaintiff must show only unequal treatment based upon membership in a protected class." *Id.*; *see also Mitura v. Finco Servs., Inc.*, No. 23 Civ. 2879, 2024 WL 232323, at *4 (S.D.N.Y. Jan. 22, 2024) ("Under the NYCHRL, a plaintiff must simply show that she was subjected to unwanted gender-based conduct."). Because the NYCHRL is not a "general civility code," Plaintiff must allege facts from which the Court can plausibly infer that the unwanted conduct was caused by a discriminatory animus. *Rothbein v. City of New York*, No. 18 Civ. 5106, 2019 WL 977878 at *9 (S.D.N.Y. Feb. 28, 2019) (quoting *Mihalik*, 715 F.3d at 110). A discriminatory motive can be shown by pleading direct evidence of discrimination, including "comments indicating prejudice on account of a protected characteristic." *Bautista.*, 642 F. Supp. 3d at 428. Comments that a reasonable person would view as only "petty slights and trivial inconveniences" do not give rise to an inference of discriminatory motive. *Mihalik*, 715 F.3d at 111.

      Plaintiff alleges that she was sexually harassed by Plaintiff during their mutual employment. SAC ¶ 66. Accepting the truth of Plaintiff's allegations, on one occasion, a female coworker overheard Mariani "saying sexually inappropriate things to" Plaintiff, and was compelled to intervene. *Id.* ¶¶ 67-68. A factfinder could reasonably conclude that Mariani's sexually harassing comments, including those made in front of Plaintiff's co-worker(s), reflect a discriminatory motive. *See Mitura*, 2024 WL 232323, at *5 (disparaging comments may reflect a discriminatory motive). A finding of discriminatory intent is further supported by Plaintiff's allegations that Mariani had sexually harassed other female baristas on various occasions. *See* SAC ¶¶ 28-29, 35, 37, 40, 46, 48, 54, 61. Taken together, these allegations plausibly state a claim of hostile work environment under the NYSHRL's more lenient, post-amendment

standard. *See, e.g.*, *Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423, 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) (holding that a supervisor's three comments about the plaintiff's perceived sexual orientation made to embarrass him and "diminish [his] success" were enough to plausibly state a NYCHRL hostile work environment claim); *Carter v. Verizon*, No. 13 Civ. 7579, 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (finding a supervisor's repeated touching of the plaintiff's shoulders was "potentially gender-charged" and sufficient to state a hostile work environment claim under the NYCHRL).

The Court turns next to whether Starbucks may be held liable under the NYSHRL. The Court incorporates by reference a previous discussion in this case of the applicable legal standard:

> [U]nder the NYSHRL, "an employer is never strictly liable for the conduct of employees, even if the harassing employee is the Plaintiff's supervisor." *Marchuk*, 100 F. Supp. 3d at 307. Instead, a "private employer . . . [can] not be held liable under the State HRL for an employee's discriminatory act 'unless the employer became a party to it by encouraging, condoning, or approving it.'" *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021) (quoting *Matter of Totem Taxi v. N.Y. State Human Rts. Appeal Bd.*, 65 N.Y.2d 300, 305 (1985)); *see also Forrest*, 3 N.Y.3d at 311–12 (applying this rule to find that because the defendant employer did not know of "the use of racial slurs and insults by a supervisor," it could not be held liable under the NYSHRL for a hostile work environment).

*M.H.*, 2023 WL 5211023, at *3. In her opposition brief, Plaintiff claims that Starbucks' "inaction in response to Mariani's serial harassment is akin to Starbucks 'encouraging, condoning, or approving' of Mariani's behavior." Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. ("Opp'n") 16, ECF No. 43. As explained in the Court's previous order in this case:

> [W]hile "[a]n employer's calculated inaction in response to discriminatory conduct may . . . indicate condonation," [*Human Rights ex rel. Greene v.*] *St. Elizabeth's Hosp.*, 66 N.Y.2d [684,] 687 [(1985)], a good-faith response to address misconduct precludes a conclusion that an employer has condoned misbehavior even if reasonable people could find that response insufficient.

*M.H.*, 2023 WL 5211023, at *5.  The Court understood that "after learning about the allegations against Mariani, Starbucks gave him a final written warning that was signed on April 2, 2021." *Id*.  It therefore concluded that no reasonable jury could find that Starbucks approved or encouraged Mariani's behavior, through calculated inaction or otherwise.  *See id*.

In her amended pleadings, however, Plaintiff now alleges that over the course of nearly half a year, Starbucks engaged in a pattern of "initial inaction and then superficial investigation into [Mariani]," SAC ¶ 59, such that questions of fact regarding Starbucks' liability remain.  In essence, Plaintiff alleges that Starbucks waited too long to investigate Mariani; then, when it did investigate him, did not do so adequately; and, finally, even after its investigation, did not impose meaningful consequences on him for his conduct.

Accepting the truth of Plaintiff's allegations, shortly after he was hired in August 2020, Mariani began sexually harassing other female coworkers.  *Id.* ¶ 28.  As early as in November 2020, a female Starbucks barista filed a complaint against Mariani, but Starbucks conducted "no investigation nor discipline" in response.  *See id.* ¶¶ 29-31.  It was not until three months later, in February 2021, after yet another complaint about Mariani's behavior, that Starbucks opened an investigation into his misconduct.  *Id*. ¶¶ 35-36.  During the investigation, Starbucks spoke to some "girls[] who reported sexual misconduct" by Mariani, but did not speak with other female co-workers  who "were also sexual[ly] harassed by [Mariani]."  *Id*. ¶¶ 40, 47-48.  Plaintiff alleges that Mariani was "emboldened" by Starbucks' "incomplete" response and that Mariani continued his harassing behavior throughout the investigation.  *Id*. ¶¶ 44, 49.  On March 31, 2021, Starbucks issued a "Corrective Action" against Mariani for violating Starbucks' anti-harassment standards.  *Id*. ¶ 50.  The Action noted that "[i]t was alleged that" Mariani "engaged in unwanted touching" and made "inappropriate sexual comments, jokes, and innuendo in the workplace."  *Id*.  Two days later, on April 2, 2021, Mariani signed a written warning from

7

Starbucks. *Id*. ¶ 52. Plaintiff alleges that this was the only form of punishment Mariani received. *See id*. ¶¶ 57-58. Several weeks later, and two days after Mariani was arrested for raping Plaintiff, Starbucks finally terminated Mariani's employment, on April 23, 2021. *Id*. ¶¶ 71, 73.[3]

The Court concludes based on these new allegations that Plaintiff has adequately alleged that Starbucks "in effect, condoned [Mariani's] sexual harassment by allegedly conducting its investigation in an ineffective and inadequate manner." *Bennett v. Progressive Corp*., 225 F. Supp. 2d 190, 211 (N.D.N.Y. 2002); *cf. E.E.O.C. v. Suffolk Laundry Servs., Inc*., 48 F. Supp. 3d 497, 522 (E.D.N.Y. 2014) (concluding that there was "ample evidence in the record from which a jury could conclude that the [Defendants'] actions, viewed as a whole, amounted to a condonation or tacit acceptance of [the perpetrator's] conduct," even where Defendants took some limited action against the perpetrator). Plaintiff's theory of liability "is far from airtight. But that closeness is exactly what makes this question a fact issue not susceptible to resolution at this early stage of litigation." *Sanchez v. Clipper Realty, Inc*., 638 F. Supp. 3d 357, 375 (S.D.N.Y. 2022), *aff'd*, No. 22-2917 Civ., 2023 WL 7272062 (2d Cir. Nov. 3, 2023).

Accordingly, Defendant's motion to dismiss Count I is denied.

## II.     Negligent Supervision, Hiring, and/or Retention

Plaintiff's newly added count—that Defendant owed a duty of care to Plaintiff as a minor-child but negligently failed to meet that duty when it hired, supervised, and retained

---

[3] The SAC states that Mariani was arrested at Starbucks on April 21, 2022 but terminated a year prior, on April 23, 2021. *See* SAC ¶¶ 71, 73. The Court assumes that the former date was errata, and that the events took place in April 2021. This assumption is further bolstered by Plaintiff's characterization of the events as taking place in April 2021. *See* Opp'n 6.

8

Mariani—must be dismissed, as Plaintiff has not alleged all of the elements of her claim. The applicable standard, as articulated by the New York Court of Appeals, is as follows:

> [T]he complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee, including intellectual property and confidential information.

*Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023). All three prongs must be met. Additionally, "the employee also must not be acting within the scope of his or her employment; for in that situation the employer would only be liable vicariously under the theory of *respondeat superior*, and not for negligent supervision or retention." *Doe v. Indyke*, 465 F. Supp. 3d 452, 468 (S.D.N.Y. 2020) (citing *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019)).

Plaintiff has not alleged the third *Moore Charitable Foundation* prong and accordingly, her claim is dismissed. Specifically, Plaintiff does not allege that her assault occurred on Starbucks' premises or with its property or resources. *See generally* SAC; *see also* Opp'n 9-11. Instead, Plaintiff argues that New York state law has expanded to include liability for events that have occurred off premises. *See* Opp'n 9. The law as it currently stands expressly provides a caveat to Plaintiff's articulation of the standard—i.e., employers may be liable for the off-premises acts of their employees where those employees "us[ed] property or resources available to [them] only through their status as an employee." *Moore Charitable Found.*, 217 N.E.3d at

9

14.[4]  Given that a plaintiff must allege all three *Moore Charitable Foundation* prongs to state a claim for relief, Plaintiff's failure to allege the third prong is fatal to her claim.[5]

## CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

The Clerk of Court is respectfully requested to terminate ECF No. 41.

SO ORDERED.

Dated: June 20, 2024
       New York, New York

_____
DALE E. HO
United States District Judge

---

[4] Absent instruction from a higher authority, the Court declines Plaintiff's invitation to follow a lower state court opinion that declined to apply *Moore Charitable Foundation*'s three-pronged test.  *See* Opp'n 11 (citing *C.B. v. Catholic Charities of the Archdiocese of New York*, No. 950541/2021, 2023 WL 7924853, at *1 (N.Y. Sup. Ct. Nov. 16, 2023)).  Plaintiff has not established that *Moore Charitable Foundation* is inapplicable, and that case has not been overturned by the Court of Appeals.

[5] Because the Court concludes that Plaintiff's negligent supervision, hiring, and/or retention claim fails as a matter of law, it does not address Defendant's alternate argument that this claim is barred by the Worker's Compensation Law.  *See* Def.'s Mem. of L. in Supp. of Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. 21, ECF No. 42.